UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
09-10312-RGS

UNITED STATES OF AMERICA

v.

STEPHEN C. DELANEY JR.
SOUTH SHORE FISHERIES, INC.

**MEMORANDUM OF DECISION AND ORDER ON
OCEAN DUKE CORP.'S MOTION FOR A PROTECTIVE ORDER**

July 15, 2010

## I.  INTRODUCTION

This matter is before the Court on the Motion of Ocean Duke Corporation

("Ocean Duke") for an Order Prohibiting Production of Ocean Duke Documents to

Defendants.  (Docket No. 34).  For the reasons detailed herein, the motion is DENIED.

The government shall produce the documents it had identified as being "particularly

relevant" to some of the charges against defendant Stephen C. Delaney, Jr.

("Delaney"), subject to the Stipulated Protective Order (formerly Docket No. 25) entered

by the court on this date.  As detailed herein, Ocean Duke has failed to establish that

these documents, which relate to fish sales made in or about 2004, contain information

that remains confidential or proprietary.  In addition, this court finds that the

government is in the best position to determine if the documents are relevant to the

pending charges, and there is no need for an *in camera* review of the documents.

## II.  <u>STATEMENT OF FACTS</u>

On March 29, 2006, the government executed a search warrant at Ocean Duke's premises in Torrance, California.  The government seized numerous documents, including those presently at issue.  On November 4, 2009, a Massachusetts Grand Jury returned a Superseding Indictment against Delaney and his company, South Shore Fisheries, charging them, *inter alia*, with falsely labeling and selling frozen fish as Paradise Grouper when, in fact, it was Pangasius, a fish in the catfish family.  The government has moved to dismiss South Shore Fisheries from the case.  The government has identified 388 pages (213 documents) of Ocean Duke's documents "as being particularly relevant to some of the charges against Delaney" (the "Disputed Documents").  <u>Gov't Opp.</u> (Docket No. 42) at 1.  Ocean Duke objects to the government's production of these Disputed Documents on the grounds that they contain confidential information and are not relevant to the charges against Delaney.

According to Ocean Duke, all of the disputed documents contain "one or more of the following: customer information, product source information, product information and specifications, purchase order information, sales order information, product pricing information, packaging information, labeling information and shipping information." <u>Ocean Duke Mem.</u> (Docket No. 35) at 8 (citing Lin Decl. (Docket No. 36) ¶¶ 2-23). Moreover, Ocean Duke contends its "economic interests will be harmed if the disputed documents are produced to Delaney or [South Shore Fisheries] because they communicate on a regular basis with Ocean Duke's competitors." <u>Id.</u> (citing Lin Decl. ¶ 24).  No further details are provided.  A review of the list of Disputed Documents

reveals that they relate to customer needs, availability of product, samples, labeling,

sales and the like for the period January 23, 2003 through October 3, 2005.  See

Docket No. 35-1.

The government contends that the documents at issue "may be material to the

defense and/or be used by the government in its case in chief."  Gov't Opp. (Docket No.

42) at 6.  As the government argues in relevant part:

> The government must prove, as elements of the relevant charges,
> that: (1) the fish involved *had been* or was intended to be imported
> and transported in interstate commerce and the conduct involved
> the sale and purchase, offer of sale and purchase and the intent to
> sell and purchase (Count One); (2) the fish at issue was introduced
> and delivered into interstate commerce when falsely and mislead-
> ingly labeled as Paradise Grouper and ponga when it was actually
> *Pangasius hypophthalmus* (Count Two), and (3) the fish at issue
> had been taken, possessed, transported and sold in violation of
> misbranding prohibitions (Count Three).  Notably, none of these
> elements must have been committed by Delaney himself.  To the
> extent that the frozen fillets at issue were imported, transported,
> sold and labeled by or at the direction of Ocean Duke even prior to
> Delaney's dealings with the fish, evidence related to Ocean Duke's
> dealings the fish are thus highly relevant.
>
> For example, in Count Three, it is entirely relevant, and the govern-
> ment must prove beyond a reasonable doubt, that the fish, before
> Delaney dealt with it, had been taken, possessed, transported and
> sold in violation of misbranding prohibitions.  In this case the
> alleged prior misbranding that the government will seek to show
> was the misleading labeling, and related transportation and sale,
> by Ocean Duke and/or the company to which it sold the fish, of
> frozen pellets of *Pangasius* as "Paradise Grouper" brand ponga.
> ...
> The disputed records are replete with information regarding what
> the product in question was and how it was labeled when it was
> possessed, transported and sold prior to Delaney's dealing with it
> (*e.g.*, ODD 0222 showing the Paradise Grouper brand ponga label
> that appeared, publicly, on much of the product at issue).  Product
> labeling, purchase orders, returns, import/export and other busi-

ness records of Ocean Duke, which company imported and sold
the frozen fillets at issue in these Counts, are highly relevant to the
case and some are likely to be exhibits in the government's case in
chief.

<u>Id.</u> at 7-8.

The government also challenges Ocean Duke's contention that the disputed

documents contain confidential information or that the protective order is insufficient to

safeguard Ocean Duke's interests.  As the government argues:

> Ocean Duke fails to even address why the protections provided by
> the Stipulated Protective Order for all the other Ocean Duke
> records already produced is apparently somehow inadequate to
> protect Ocean Duke's interests when it comes to these particular
> 388 pages.  Ocean Duke's records do not contain the secret recipe
> for a food product, they contain rather dated (predominantly circa
> 2003-2004) records of customer names, item code numbers,
> purchase orders and other very commonplace and ordinary
> business records.  To the extent Ocean Duke fears that this
> information will somehow compromise its market position in 2010
> and beyond, the straightforward Protective Order already filed
> would be more than adequate protection.

<u>Gov't Opp.</u> at 9.

In response to these arguments, Ocean Duke merely reiterates that in its view

the documents are not relevant and should not be produced by the government in

conformance with its Rule 16 or <u>Brady</u> obligations.  <u>See</u> <u>Ocean Duke's Reply</u> (Docket

No. 46) at 2-3.  The basis for the argument seems to be that Delaney is not mentioned

in the documents and the documents do not involve transactions or dealings with

Delaney.  <u>Supp. Lin Decl.</u> (Docket No. 47) ¶ 4.  Ocean Duke does not address why

these dated materials constitute confidential or trade secret information, or why these

old documents remain commercially relevant.  Rather, Ocean Duke asserts only that

"Delaney has a wealth of contacts and is well-known in the seafood industry" and his "business necessitates regular communication with customers, including Ocean Duke's competitors." Id. ¶ 3.  Thus, Ocean Duke argues, any "intentional or inadvertent disclosure to Ocean Duke's competitors of the Ocean Duke confidential business information . . . will cause irreparable harm to Ocean Duke's economic interests because it can be used to unfairly compete against Ocean Duke." Id.

　　　　Additional facts will be provided below where appropriate.

### III.  ANALYSIS

　　　　In Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and its progeny, the Supreme Court required the government to disclose any exculpatory evidence which is "material to either to guilt or to punishment." Id. at 87, 93 S. Ct. at 1197.  "Information is 'material' if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Ciocca, 106 F. 3d 1079, 1082 (1st Cir. 1997) (internal punctuation and citation omitted).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985) (internal punctuation and citation omitted).  The obligation to produce exculpatory evidence applies to material within the government's possession or under its control. United States v. Bender, 304 F.3d 161, 163 (1st Cir. 2002), and cases cited.  "Rule 16, in turn, requires the government to disclose, upon request, inter alia, statements by the defendant and documents and objects in the government's control where 'the item is material to preparing the defense,' Fed. R.

Crim. P. 16(a)(1)(E)(i), or the government intends to use the item in its case in chief, id. 16(a)(1)(E)(ii)." United States v. Williams Cos., Inc., 562 F.3d 387, 396 (D.C. Cir. 2009).  While a third party "has standing to protect its interest in confidentiality," it must be protected "in a manner consistent with [a defendant's] right to a fair trial and the government's *Brady* and Rule 16 obligations to [the defendant]."  Id.

In the instant case, Ocean Duke has failed to establish that its dated business information remains worthy of any protection six years later.  It is beyond dispute that the party seeking to limit production of information "has the burden of showing that good cause exists for issuance of that order." Pub. Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988) (citation omitted) (referring to a protective order under Fed. R. Civ. P. 26(c)).  "It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection . . . ." Id.  Here, despite an express challenge by the government, Ocean Duke has failed to provide any details as to why these business records require the extraordinary protection of absolute secrecy.  It has not met its burden of proof.

Moreover, this court finds that the Stipulation and Protective Order offers Ocean Duke sufficient protection from harm.  Ocean Duke argues only that Delaney may violate the Protective Order and show or discuss the documents with Ocean Duke's competitors which could cause it unspecified harm.  See Ocean Duke's Reply (Docket No. 46) at 1.  However, this court has no reason to believe that Delaney would violate the Protective Order and no facts have been proffered from which the court could reach

such a conclusion.  This, coupled with the fact that Ocean Duke has not explained how

it would be harmed if the dated information was disclosed, compels the conclusion that

the Protective Order is a sufficient safeguard of Ocean Duke's interests.  See Williams

Cos., 562 F.3d at 397 (District Court to determine if third party's allegedly confidential

documents being produced to defendant pursuant to the government's Rule 16 and

Brady obligations should be governed by a protective order).

Ocean Duke's principal argument is that the documents are not relevant to the

claims against Delaney.  The government strenuously disagrees arguing, as quoted

above, that "[t]he disputed records are replete with information regarding what the

product in question was and how it was labeled when it was possessed, transported

and sold prior to Delaney's dealing with it" and that the documents contain information

which is "highly relevant" to the case.  Gov't Opp. (Docket No. 42) at 8.  Ordinarily, the

court will "accept the government's representations as to what documents in its

possession are 'material.'"  United States v. Lloyd, 992 F.2d 348, 352 (D. D.C. 1993),

and cases cited.  This court sees no reason to challenge the government's assessment

of materiality in this case.

For the same reason, this court declines Ocean Duke's suggestion that this court

conduct an in camera review of the Disputed Documents.  There is no question that an

in camera review may be appropriate in certain circumstances.  However, Ocean Duke

has not cited any cases where such a review was undertaken to challenge the govern-

ment's determination that documents needed to be produced to a defendant.  Rather,

the courts generally conduct an in camera review to determine whether the defendant

is entitled to additional material beyond that which the government is certain it is

required to produce.  See, e.g., United States v. Innamorati, 996 F.2d 456, 487 (1st Cir.

1993) (government seeks *in camera* review to confirm that documents do not need to

be produced); United States v. Sepulveda, 15 F.3d 1161, 1179 (1st Cir. 1993) (court

reviews presentence report *in camera* where government questions if it needs to be

disclosed); United States v. Pena, 227 F.3d 23, 25-28 (2d Cir. 2000) (court reviews

confidential presentence report *in camera* where government questions whether it

contains information which needs to be produced); United States v. Hsu, 155 F.3d 189,

193 (3d Cir. 1998) (court reviews documents *in camera* in response to government's

motion for a protective order to prevent disclosure of trade secrets contained in third

party documents which defendant requested, but government objected to producing).

"In the typical case," "it is the state that decides which information must be

disclosed." Pennsylvania v. Ritchie, 480 U.S. 39, 59, 107 S. Ct. 989, 1002, 94 L. Ed.

2d 40 (1987).  The "burden of disclosing evidence favorable to the defendant [is] on the

government, not on the court." United States v. Caro-Muniz, 406 F.3d 22, 30 (1st Cir.

2005).  Therefore, the court is not obligated to engage in an *in camera* review of

documents in all cases. Id. at 29-30.  See also United States v. Cartagena, 593 F.3d

104, 114 (1st Cir. 2010) ("In the absence of a specific reference or 'particularized and

focused request' for potentially exculpatory evidence, we hold that the district court did

not abuse its discretion in denying *in camera* review of the DEA agents' notes.").  In the

instant case, the government has far more information and knowledge than this court

about which of Ocean Duke's documents should be produced to Delaney under Brady

and Rule 16.  In addition, Ocean Duke has not made a particularized or persuasive showing either that the Disputed Documents contain confidential information, or that the stipulated protective order is insufficient to safeguard its rights.  Therefore, this court declines to review the documents *in camera*, and orders that the Disputed Documents be produced subject to the protective order issued herewith.

### ORDER

The Motion of Ocean Duke Corporation for an Order Prohibiting Production of Ocean Duke Documents to Defendants (Docket No. 34) is DENIED.  Unless otherwise agreed by the parties, the government shall produce the Disputed Documents to Delaney within fourteen (14) days of the date of this Order, subject to the Stipulation and Protective Order for Ocean Duke Proprietary Information entered by the court herewith.

   / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge