UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 09-10312-RGS

UNITED STATES

v.

STEPHEN C. DELANEY, JR.

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION FOR JUDGMENT
OF ACQUITTAL N.O.V.

July 5, 2011

STEARNS, D. J.

On April 11, 2011, at the conclusion of a five-day trial, defendant Stephen Delaney was convicted of one felony count of false labeling of fish in violation of the Lacey Act, 16 U.S.C. §§ 3373(d)(2) and 3373(d)(3)(A) and one lesser (misdemeanor) count of false labeling of fish in violation of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 331(a), 333(a)(2) and 343(a)(1). A felony conviction under the Lacey Act requires proof that a defendant: (1) knowingly made or submitted a false record, account, or label for, or false identification of fish; (2) that had been or were intended to be transported in interstate or foreign commerce; and (3) that the making or submission of a false record, account or label for, or false identification of fish, involved the sale or purchase of, or offer of sale or purchase of, fish with a market

value greater than $350. A misdemeanor conviction under the FDCA requires proof that a defendant: (1) knowingly introduced or delivered for introduction into or receiving in interstate commerce food; (2) that was misbranded. Delaney now renews his motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c). A hearing on the motion was held on June 28, 2011.

The standard for a judgment n.o.v. is a familiar one. "A federal court may not set aside a jury verdict and direct the entry of a contrary verdict unless no reasonable jury could have returned a verdict adverse to the moving party." *Havinga v. Crowley Towing and Transp. Co.*, 24 F.3d 1480, 1483 (1st Cir. 1994). A verdict will be set aside only if "after examining the evidence of record and drawing all reasonable inferences in favor of the nonmoving party, the record reveals no sufficient evidentiary basis for the verdict." *Zimmerman v. Direct Fed. Cred. Union*, 262 F.3d 70, 75 (1st Cir. 2001). In reviewing a motion for judgment n.o.v., the court "may not weigh the evidence, undertake credibility determinations, or engage in differential factfinding." *Id*. "In the end, the jury's verdict must stand unless the evidence, taken in the light most favorable to the prevailing party, points unerringly to an opposite conclusion." *Id*.

I will turn to Delaney's first argument for acquittal on the Lacey Act conviction as it is the easier to resolve. Delaney looks not to the operative sections of the statute

2

itself, but to its definition of the meaning of "fish or wildlife." Section 3371(a) of the Lacey Act defines "fish or wildlife" as:

> any wild animal, whether alive or dead, including without limitation any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean, arthropod, coelenterate, or other invertebrate, whether or not bred, hatched, or born in captivity . . . .

According to Delaney, "[t]he plain language of this definition includes animals that were 'bred, hatched, or born in captivity,' but it does not include animals that spent their entire lives in captivity and which never lived in the wild." Def.'s Mot. J. of Acquittal at 2. As the fish that figure in Count 4 were pollock, for which no evidence was offered by the government suggesting that they ever "lived outside of captivity," Delaney contends that the government failed to establish an essential element of its case.[1] *Id*. at 7.

Assuming for purposes of argument that the § 3371(a) definition of "fish or wildlife" is an element of a criminal offense under the Lacey Act, the court disagrees with Delaney's contention that an animal at some point in its life span must live in a natural state to be deemed "wild." This notion is both unworkable in practice and contrary to the accepted biological distinction between wild and domesticated animals.

---

[1] The evidence established only that the pollock fillets had been purchased from a Chinese company that has a reputation for falsely identifying the origins and species of the fish it sells.

3

"Domestication" is defined by the Britannica Concise Encyclopedia (among other sources) as the

> [p]rocess of hereditary reorganization of wild animals and plants into forms more accommodating to the interests of people. In its strictest sense, it refers to the initial stage of human mastery of wild animals and plants. The fundamental distinction of domesticated animals and plants from their wild ancestors is that they are created by human labour to meet specific requirements or whims and are adapted to the conditions of continuous care people maintain for them.

Under Delaney's proposed definition of what it means to be wild, a domestic animal, say a house cat, that is separated from its owner and lives in a feral state, however briefly before finding its way home, would be classified as wildlife, while a lion that is born and raised in captivity and spends its life in a zoo would be classified as a domestic animal. The pollock at issue here, whether raised in a pen or caught on the high seas is an unmastered species that has not been bred to live under human care and therefore meets any reasonable biological definition of what it means to be a "wild" animal.

Delaney's second argument is conceptually the more difficult and is directed at the felony provisions of Count 4. Section 3372(d) of the Lacey Act makes it unlawful to falsely identify imported fish. Section 3373(d)(3), which sets out the penalties for a violation of § 3372(d), provides that a knowing violation of the statute shall be punished as a felony if:

4

(A) . . . the offense involves:

(I) the importation or exportation of fish or wildlife or plants; or
(ii) the sale or purchase, offer of sale or purchase, or commission of an act with intent to sell or purchase fish or wildlife or plants with a market value greater than $350; and

(B) [shall be punished as a misdemeanor] if the offense does not involve conduct described in subparagraph (A).

As Delaney reads the statute, it requires proof of two elements: (1) that the fish were previously imported or transported in interstate commerce; and (2) that the charged offense involved the import, export, purchase, or sale of the fish. Conceding the interstate commerce element, Delaney argues that the statute separates persons like himself who simply mislabel fish fillets (misdemeanants) from persons like Thomas Katz (the government's cooperating witness) who import and sell the mislabeled product (felons).[2] Delaney frames the issue as follows:

[t]he government presented evidence that the fillets at issue in Count 4

---

[2] At the close of evidence at trial, Delaney argued that the government had failed to establish that the fish had ever been transported in interstate or foreign commerce. The jury, consistent with the court's instructions, found otherwise and Delaney does not press the point further in his Supplemental Motion. Delaney also made the argument that the government was required under both Counts 4 and 6 to specifically prove that the fish originated from China. The court rejected this argument as the statutes require only that the country of origin of the fish was knowingly misrepresented, whatever their provenance. Delaney's recorded conversations with Katz made clear that he knew that he was being asked to relabel fish imported from China as having originated in Canada.

> had been imported, sold, and purchased prior to Mr. Delaney's actions, but it did not present any evidence that Mr. Delaney's offense (relabeling frozen fillets pursuant to Katz's direction) involved the sale or purchase of fish. . . . The Court instructed the jury that the government must prove that "[Mr. Delaney's] making or submission of a false record, account or label for, or false identification of fish, involved the sale or purchase of, or offer of sale or purchase of fish . . . ." This instruction states that the jury must find that Mr. Delaney's own conduct involved the purchase or sale of fish. The government did not present any evidence suggesting that Mr. Delaney's conduct involved the purchase or sale of fish.

Def.'s Supplemental Mot. J. of Acquittal at 4-5. The ellipsis in the second quoted sentence is telling. The court's instruction continued in its entirety: "or involved the sale or purchase of fish *with a market value greater than $350*." (emphasis added). The natural reading of the statute defines a misdemeanor as an offense that (1) involves (relates to) misbranded fish that has not been imported or exported, subpart (3)(A)(I), or (2) misbranded fish that has been imported or exported, but has a commercial of less than $350, subpart (3)(A)(ii). This reading is consistent with the structure of § 3372(d), which sets out in the disjunctive (as does § 3372(d)(3)), the separate elements of either import or export of fish involving a foreign country or the transport of fish in interstate commerce. In the latter respect, subpart (3)(A)(ii) simply tracks other federal criminal statutes that set a minimum dollar amount as establishing federal jurisdiction, *see, e.g.*, 18 U.S.C. § 2314 (interstate transportation of stolen property - value of $5,000 or more, a felony), or as defining the distinction between a felony and a misdemeanor

6

offense, *see, e.g.*, 18 U.S.C. § 1711 (misappropriation of postal funds - if $1,000 or less, a misdemeanor).

ORDER

For the foregoing reasons, defendant's motion for judgment of acquittal N.O.V. is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE